Filed 9/25/13  Harrelson v. Carmax Auto Superstores California CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| TIFFINI HARRELSON, | |
| Plaintiff and Appellant, | E054435 |
| v. | (Super.Ct.No. CIVRS1104169) |
| CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Ben T. Kayashima, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Rosner, Barry & Babbitt, Hallen D. Rosner, Christopher P. Barry, and Angela J. Patrick for Plaintiff and Appellant.

Arent Fox LLP, Aaron H. Jacoby and Victor Danhi for Defendant and Respondent.

1

Plaintiff and Appellant Tiffini Harrelson entered into a purchase of a car through Defendant and Respondent CarMax Auto Superstores California, LLC (CarMax). Harrelson filed a complaint against CarMax claiming that the transaction was conducted in violation of the Rees-Levering Automobile Sales Finance Act (ASFA) (Civ. Code, §§ 2981-2984.6) and Civil Code section 1709 and that it also violated the state Unfair Competition Law (the UCL) (Bus. & Prof. Code, §§ 17200-17210). The trial court granted CarMax's demurrer, did not certify the class, and dismissed the action without leave to amend on the ground it failed to state a cause of action under either ASFA, Civil Code section 1709, or the UCL.

Harrelson essentially claims on appeal that the trial court erred by sustaining CarMax's demurrer without leave to amend.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Complaint*

On April 22, 2011, Harrelson filed her complaint for injunctive relief, restitution, and damages individually and as a class action against CarMax. She alleged that CarMax was based in Ontario and that she was a resident of Hesperia in San Bernardino County. She alleged the action was properly brought as a class action pursuant to Code of Civil Procedure section 382 and/or Civil Code section 1781, subdivision (a).

Harrelson declared the first class to be any person who in the four years preceding the filing of the complaint purchased a car from CarMax, signed a retail installment contract (RIC), and made a deferred down payment and whose purchase contract did not

2

disclose that some portion of the down payment would be deferred until not later than the due date of the second regularly scheduled installment under the contract and that was not subject to a finance charge. A second class consisted of those persons who traded in a vehicle from which the proceeds would be used to purchase a car from CarMax and signed a separate vehicle purchase agreement (VPA). Harrelson sought rescission of, and restitution on, the contracts both individually and for the class.

On October 13, 2008, Harrelson went to the CarMax store in Ontario to look at a Saab vehicle she was interested in purchasing. After a test drive, she decided to buy the vehicle. Harrelson sought to trade in her Honda Civic. She owed about $3,000 more than the Civic was worth, i.e. she had negative equity on the Civic. She was advised by CarMax that she would have to make a cash down payment on the Saab. Harrelson advised the CarMax salesman that she did not have the required down payment -- $1,100 -- in her bank account but could fund the check in five days. CarMax agreed to hold the check for five days.

Harrelson signed the RIC. According to the RIC, the amount financed for the Saab was $22,197.09, and the monthly payments were $496.79. On the itemization on the amount financed, CarMax represented that Harrelson had given it a check for $1,103.33 as a down payment. Harrelson stated (and attached the RIC) that this was false because she had given a check for $1,100 as a down payment that would not be cashed until October 18, 2008. The held-check form, dated October 13, 2008, stated that the check in the amount of $1,100 would be held until October 18 until Harrelson could transfer funds from a business account. The funds were verified.

3

The RIC also stated that Harrelson had traded in her Civic. CarMax was paying her $12,500 for Civic; she owed $15,247.80 on the vehicle. The RIC stated that the trade-in vehicle, the Civic, was sold to CarMax. The net equity on the trade-in was negative $1,644.47 and would be part of the amount financed. Harrelson signed a separate VPA that included language that the sale of the Civic was final and in no way connected to the purchase of the Saab from CarMax. It also included language that she was financing the pay-off amount. Harrelson also signed a discharge of lien disclosure form stating that the negative equity from the sale of her Civic was included in the RIC. If Harrelson did not buy the Saab, she would owe the balance on the Civic directly to CarMax.

Harrelson alleged in her first cause of action that CarMax violated ASFA. She alleged that the RIC was a conditional sales contract within the meaning of Civil Code section 2981, subdivision (a). She alleged that CarMax failed to disclose on her RIC that a portion of the down payment was deferred until after delivery of the vehicle but before the second installment payment was due and that holding her check was equivalent to a deferred payment. This conduct violated Civil Code sections 2981.9 (requiring that the total cost and payment on a motor vehicle be included in one document, the so-called single document rule), 2982, subdivision (a)(6)(D) (requiring a car dealership to make disclosures to the consumer, including any payments that are deferred); and 2982, subdivision (c) (disclosure of deferred down payment).

The second cause of action alleged that CarMax engaged in unlawful, unfair, or fraudulent business practices in violation of Business and Professions Code section

4

17200 et seq. Harrelson alleged this cause of action was supported by the violation of ASFA by failing to properly disclose that she made a deferred payment and that the held-check form violated the single document rule. She also alleged that CarMax was engaging in unlawful business acts by improperly completing purchase contracts, failing to properly disclose deferred down payments on purchase contracts, and failing to disclose in a single document all of the agreements as to the costs and terms of payment for the purchase of the vehicles. She claimed this also violated Civil Code section 1709 et seq. Harrelson alleged that she lost money and suffered injury in fact due to the violations. She sought injunctive relief and restitution.

The third cause of action alleged another violation of ASFA for the separate VPA, which violated Civil Code section 2981.9's single document rule. Despite the VPA stating it was a separate transaction, the RIC included the trade-in as part of the down payment on the purchased vehicle. Further, the discharge of lien disclosure agreement created a separate obligation in regard to the trade-in vehicle if the purchase of the Saab fell through. The fourth cause of action stated this violation of ASFA also was a violation of the UCL and also that it was unfair competition and a deceitful business practice.

The prayer for relief included certifying the classes; declaratory, equitable, and injunctive relief; general, special, statutory, and actual damages according to proof; rescission and/or restitution of all monies required to be expended; incidental and consequential damages according to proof at trial; and reasonable attorney fees and costs.

5

B.    *Demurrer to Complaint*

CarMax demurred to the complaint. It contended that ASFA was not violated, and, even if there was noncompliance with ASFA, there was no resulting damage under either ASFA or the UCL. CarMax averred that held checks were not the equivalent of "deferred down payments" as described in ASFA. It argued the check was dated the same date as the sale, it was given to CarMax, and the funds were verified. This was the equivalent of CarMax not depositing a check on the same day as a purchase. The held-check form did not change the fact that the check was immediately negotiable; the check itself would have to refer to the hold.

As for the violation of the single document rule due to the VPA and discharge of lien disclosure for the sale of the Civic (the third cause of action), because the complaint failed to show there were additional agreements as to the cost and terms of payment for the *Saab*, it did not violate ASFA. VPA and discharge of lien disclosure related only to the sale of the Civic. The VPA and RIC were not interrelated, and all the terms for the sale of the Civic did not need to be included in the RIC.

Also in the demurrer, CarMax argued that if there was no ASFA claim, then there would be no UCL claims. Further, Harrelson was unable to show actual injury or damages, which was required in order to have standing to bring a UCL claim.

C.    *Response to Demurrer*

Harrelson responded that CarMax was precluded from depositing the check until October 18, 2008, based on the written agreement in which CarMax agreed not to cash the check. Harrelson denies that the check was negotiable cash. The RIC should not

6

have reflected the check as a cash down payment, but rather a deferred down payment. This violated the strict requirements of ASFA.

As for the documents pertaining to the Civic, the trade-in amount was part of the purchase of the Saab. The VPA and discharge of lien disclosure contain additional and material terms regarding the trade-in vehicle that was not in the RIC. Harrelson also claimed that if she stated a cause of action for ASFA claims, the UCL claims were valid. Also, she had shown an injury in fact because her remedy for the violation of ASFA was that the contract was unenforceable. Harrelson had been making payments on unenforceable contracts.

Harrelson also alleged that even if the ASFA claims did not state a cause of action, the UCL claims were valid on their own. Harrelson had alleged a violation of Civil Code section 1709, which was sustained even without the ASFA violations. She insisted that CarMax deliberately requires a customer to sign documents containing inconsistent terms regarding trade-in vehicles and hides deferred payments in order to get the customer financing. She also asked for leave to amend the complaint if there was any confusion as to the claims.

D.      *Response to Opposition to Demurrer*

CarMax responded that Harrelson could not show damage and that the UCL requires a monetary loss. CarMax insisted that the RIC included all necessary disclosures. CarMax only needed to disclose on the RIC a deferred payment, not a hold on a check. Further, CarMax disclosed all necessary information on the RIC for the trade-in vehicle. Civil Code section 2981.9 does not require disclosure on a single

document of all terms, only those having to do with the terms of payment on the new vehicle.

E. *Judgment*

The demurrer was heard on August 1, 2011. The trial court outlined the causes of action alleged by Harrelson. It stated in its tentative opinion that the complaint "lacks any meaningful allegations of either deceit or damages." It also stated that the procedure involving the held check was the equivalent to actual receipt of cash, i.e., a cash payment, and not a delayed down payment. There was no misrepresentation regarding the timing of the payment. Further, it found Harrelson's argument that the entire VPA had to be incorporated into the RIC lacked merit. It did not certify the class and granted the demurrer without leave to amend.

The trial court signed the judgment on August 4, 2011. A notice of entry of judgment in favor of CarMax, without leave to amend, was filed on August 12, 2011. On October 5, 2011, CarMax was awarded attorney fees in the amount of $12,236.50 and costs in the amount of $395.

Harrelson filed her notice of appeal from the order granting the demurrer and dismissing the complaint without leave to amend on August 26, 2011. On December 5, 2011, she filed a notice of appeal from the award of attorney fees and costs. We consolidated the two appeals.[1]

---

[1] On appeal, Harrelson raises no issues as to the trial court's award of attorney fees and costs.

## II

## TIMELINESS OF ASFA CLAIMS

We must first address CarMax's claim -- raised for the first time in this appeal -- that Harrelson's causes of action under ASFA (the first and third causes of action) are time barred.

CarMax claims that a one-year statute of limitations under Civil Code section 340, subdivision (a) applies to these claims because the violation was statutory and not contractual, and rescission of the RIC would be a penalty. According to Harrelson, the applicable limitations period is four years, pursuant to Code of Civil Procedure section 337, subdivision (3), and California Uniform Commercial Code section 2725.

A.    *Additional Factual Background and Standard of Review*

Harrelson signed the RIC on October 13, 2008. She filed the complaint on April 22, 2011, over two and a half years after she signed the contract. Although CarMax addresses this issue for the first time on appeal, Harrelson does not dispute that CarMax can raise the issue. Moreover, it is well established that "'"[o]n appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law."' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the petition/complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]" (*San Diego City*

9

*Firefighters, Local 145 v. Board of Administration, etc.* (2012) 206 Cal.App.4th 594, 605-606.) Hence, we can review the statute of limitations issue for the first time on appeal if it is a valid ground to uphold the demurrer.

B. *Applicable Provisions of ASFA*

"The Rees–Levering Automobile Sales Finance Act [(Civ. Code, § 2981 et seq.)] became effective January 1, 1962. The act replaced the 1945 Automobile Sales Act and was designed to provide a more comprehensive protection for the unsophisticated motor vehicle consumer." (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69, fn. omitted.) ASFA serves to protect motor vehicle purchasers from abusive selling practices and excessive charges by requiring full disclosure of all items of cost. (*Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 91.)

"Under the ASFA, every conditional sale contract must contain 'in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness.' (§ 2981.9 [the single document rule].) Conditional sale contracts must also contain all disclosures and notices required under section 2982 . . . . [¶] Subdivision (a) of section 2982 requires certain disclosures, which must be labeled '"itemization of the amount financed,"' including, among other things, the cash price, the total cash price (which is the sum of other required disclosures), the amount of any insurance premiums included in the contract, the amount financed, and '[t]he amount of any administrative finance charge, labeled "prepaid finance charge."' [Citation.]" (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1000 (*Nelson*).)

10

ASFA further provides that "[i]f the seller . . . violates any provision of Section 2981.9 or of subdivision (a), (j), or (k) of Section 2982, the conditional sale contract shall not be enforceable, except by a bona fide purchaser, assignee or pledgee for value or until after the violation is corrected as provided in Section 2984, and if the violation is not corrected the buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller or his assignee."  (Civ. Code, former § 2983.)[2]  Civil Code, former section 2983.1 sets forth the buyer's choice of remedies if the contract is unenforceable:  "When a conditional sale contract is not enforceable under Section 2983 or 2983.1, the buyer may elect to retain the motor vehicle and continue the contract in force or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle.  The value of the motor vehicle so returned shall be credited as restitution by the buyer without any decrease which results from the passage of time in the cash price of the motor vehicle as such price appears on the conditional sale contract."

C.    *Statute of Limitations*

Here, Harrelson claims in her first and third causes of action that CarMax violated Civil Code sections 2981.9, the single document rule, and 2982, subdivision (a) by failing to disclose the terms of payment.  CarMax, relying primarily on *Stone v. James* (1956) 142 Cal.App.2d 738, the only case to directly address the statute of limitations period for

---

**2**      ASFA was amended in 2011, effective October 7, 2011.  The judgment was entered on August 11, 2011, so the revisions are not applicable here.  In any event, the quoted portions remained substantially the same.

11

violations of the aforementioned sections, to urge the applicable period is one year, pursuant to Code of Civil Procedure section 340, subdivision (a).

Code of Civil Procedure section 340, subdivision (a) provides for a one-year statute of limitations if it is "[a]n action upon a statute for a penalty or forfeiture . . . ." Code of Civil Procedure section 337, subdivision (3) provides for a four-year statute of limitations period for "[a]n action based upon the rescission of a contract in writing." California Uniform Commercial Code section 2725 provides a four-year statute of limitations for an action for breach of any contract involving the sale of goods.

"[T]he nature of the right sued upon . . . determines the applicability of the statute of limitations." (*Jefferson v. J.E. French Co.* (1960) 54 Cal.2d 717, 718.) ASFA does not contain a statute of limitations. (*Jack Heskett Lincoln-Mercury, Inc. v. Metcalf* (1984) 158 Cal.App.3d 38, 42 (*Heskett*).)

"Under [Civil Code] section 2983, only violations of [Civil Code] section 2981.9, or subdivisions (a), (j), or (k) of [Civil Code] section 2982, make the contract unenforceable. The language of these statutes is clear that only the violation of *specific* disclosure requirements renders the contract unenforceable." (*Nelson, supra,* 186 Cal.App.4th at p. 1001.) "The '"settled rule"' in California is that statutes which provide for damages that are in '"addition[] to actual losses incurred"' [citation], or 'not based upon actual injury' [citation], are generally '"considered penal in nature [citations], and thus governed by the one-year period of limitations stated in section 340, subdivision (1)." [Citation.]' [Citation.] However, Code of Civil Procedure section 340 does not

12

apply if the award of a penalty is discretionary, rather than mandatory." (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 842.)[3]

Here the contact in question was the RIC signed by both Harrelson and CarMax. The RIC itself imposed no obligation to properly identify the down payment. The RIC did not require that the terms of payment of the Saab all be included in the RIC. There was no violation of the contract in this case. The only violation was that the RIC violated ASFA provisions regarding disclosure and the single document rule, a purely statutory violation.

Moreover, Harrelson suffered no harm as a result of the held-check form. Harrelson still paid the down payment with a check, which the parties agreed would not be cashed for five days. As for the separate VPA and discharge of lien disclosure, she suffered no harm. She traded in her Civic, she received a payment on the Civic, and the remainder she owed on the car was rolled into the purchase of the Saab. Harrelson's claims are based purely on the statutory violation of ASFA.

Nonetheless, under Civil Code sections 2982 and 2983, she would be entitled to a refund of all the sums that she expended on the Saab, subject to a limited discretionary offset for having used the car for over two and a half years. (*Nelson, supra,* 186 Cal.App.4th at pp. 1012-1013.) Since there was no actual injury, this recovery and right of rescission constituted a penalty under Code of Civil Procedure section 340, subdivision (a). As stated, generally, the one-year statute of limitations for an action

---

[3]    In 2002, subdivisions (1) through (5) of Code of Civil Procedure section 340 were redesignated as (a) through (e). (Stats. 2002, ch. 448, § 3, pp. 2522-2523.)

upon a statute for a penalty applies if the civil penalty is mandatory. (*Hypertouch, Inc. v. ValueClick, Inc., supra,* 192 Cal.App.4th at p. 842.) Here, if Harrelson could prove a violation in the single document rule or the disclosures, she was entitled to rescission of the RIC.

*Stone* correctly held that the statutory predecessor of current Civil Code section 2983 created a statutory liability for a penalty and was governed by Code of Civil Procedure section 340, subdivision (a)'s one-year limitations period. (*Stone v. James*, *supra*, 152 Cal.App.2d at pp. 738-740.)

Although *Stone* is the only case that has addressed that the rescission remedy of ASFA is penal in nature and based on statutory violation, other cases have addressed statutes that are similar in language to the provision in ASFA. In *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 387, that court interpreted Business and Professions Code section 6061, which requires an unaccredited law school to provide its students a disclosure statement with information about the school. If it fails to do so, it must refund to its students all fees they paid. (*Id.* at pp. 377-378.) The *Goehring* court concluded that this was a statute creating a claim for a penalty. "We conclude the general purpose of the refund provision of 6061 is penal in nature, as actual damage is not an element of the claim. Rather, to obtain a refund of tuition a plaintiff need only show the law school did not timely comply with disclosure requirements. Contrary to plaintiffs' position, the payment of tuition, standing alone, does not constitute actual damage. For instance, here the jury found that plaintiffs were not damaged by paying tuition to [the law school], and thus without section 6061 they would have no ground for the recovery

14

of tuition. Moreover, the refund of fees is mandatory, and '[g]enerally, [Code of Civil Procedure] section 340, subdivision (a) applies if a civil penalty is mandatory.' [Citation.]" (*Id* at p. 387.) As in *Goehring,* here the nature of the action was failure to disclose -- a violation of a statute and not a written contract -- and rescission is mandatory.

Harrelson contends that since there were major amendments to ASFA in 1961, after *Stone* was decided, its findings are no longer applicable.

"The version of the Automobile Sales Financing Act in effect in the mid-1950's . . . required only the following minimal detail about the down payment: '"1. The cash price of the personal property described in the conditional sale contract. [¶] 2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. . . . [¶] 3. The amount unpaid on the cash price, which is the difference between Items 1 and 2.'" [Citation.]" (*Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1003-1004.)

However, at the time *Stone* was decided, the remedy for a violation of the disclosure requirements stated as follows: "(e) If the seller, except as the result of an accidental or bona fide error in computation, shall violate any provision of subdivisions (c), or (d) of this section the conditional sale contract shall not be enforceable, except by a bona fide purchaser for value, and the buyer may recover from the seller in a civil action the total amount paid on the contract balance by the buyer to the seller or his assignee pursuant to the terms of such contract." (Civil Code, former § 2982, added by

15

Stats. 1945 ch. 1030 § 2, pp. 1992-1993, as amended by Stats. 1949, ch. 1594, § 1, p. 2843.)

The amended version of the applicable remedy provisions is identical. We have set forth Civil Code sections 2983 and 2983.1, *ante*. Despite changes to the disclosure requirements of ASFA, the remedy of rescission has remained the same. Thus, *Stone* correctly held that the statutory predecessor of current section 2983 created a statutory liability for a penalty and was governed by Code of Civil Procedure section 340, subdivision (a)'s one-year limitations period. While the 1961 changes did expand ASFA in many respects, it did not alter ASFA's rescission remedy.

Harrelson also relies upon *Heskett* to support her claim that the statute of limitations in this case is four years. *Heskett* was a car dealer's suit for a deficiency against a defaulting buyer, i.e., it was a suit to enforce the buyer's contractual promise to pay, not a claim for rescission or a statutory claim. (*Heskett*, *supra*, 158 Cal.App.3d at p. 40.) The court concluded the four-year limitation under Code of Civil Procedure section 337 and California Uniform Commercial Code section 2725 was applicable because the action was based on the written contractual violation. Even the case itself distinguished *Stone* on this very ground, wherein *Stone* involved a remedy that was a penalty or forfeiture. (*Heskett*, at pp. 41-43.) Here, Harrelson's claims enforce statutory obligations (Civ. Code, §§ 2982, subd. (a)(6), 2981.9) and seek a statutory remedy (Civ. Code, §§ 2983, 2983.1). *Heskett* does not address the limitations period applicable in this case.

Contrary to Harrelson's argument, *Nelson* does not resolve the issue in her favor. *Nelson* only noted that Pearson Ford raised the statute of limitations, but it found the

16

issue was moot. It held, "Finally, to avoid liability to the insurance class under the ASFA, Pearson Ford argues that *if* the monetary award to the insurance class under the ASFA is correct, then, as a matter of law, the one-year statute of limitations for actions on a statute imposing a forfeiture barred Nelson's ASFA claims. (Code Civ. Proc, § 340, subd. (a).) This contingent argument is moot based on our conclusion that the trial court imposed an improper remedy for Pearson Ford's violations of the ASFA as to the insurance class." (*Nelson*, *supra*, 186 Cal.App.4th at p. 1007.) Nelson makes no finding as to whether rescission involves a penalty or forfeiture under ASFA.

Based on the foregoing, Harrelson's first and third causes of action failed to state a claim because they were barred by the one-year statute of limitations in section 340, subdivision (a). At the time that Harrelson signed the RIC, on October 13, 2008, she was aware of the alleged violations of ASFA. However, she waited over two and a half years (and until the Saab began having mechanical problems) to file suit here. Harrelson can express no injury under ASFA. Nonetheless, if she could prove a technical violation, she could seek rescission of the contract and return the Saab, minus any offset amount for her use of the car. The rescission afforded by ASFA is clearly a penalty, and hence Harrelson needed to file her complaint within the one-year period. Harrelson could only go forward on her second and fourth causes of action, alleging violations of the UCL, which carries a four-year statute of limitations. (Bus. & Prof. Code, § 17208; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178-179.)

17

## III

## THE UCL CLAIMS

Even though we find that Harrelson's claims under ASFA are time barred, she has asserted in the second and fourth causes of action that the actions of CarMax violated the UCL.  In addition to claiming that the violation of ASFA created unfair competition, a violation of the UCL, she also cited to Civil Code section 1709 and asserted that CarMax engaged in fraudulent business practices by failing to disclose material facts.

"A UCL claim will survive a demurrer if the plaintiff can plead '"general factual allegations of injury resulting from the defendant's conduct."'  [Citation.]"  (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 521.)  "'Unfair competition' includes 'any unlawful, unfair or fraudulent business act or practice . . . .'"  (*Id.* at p. 520.)

A private action for relief under the UCL can be brought only "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  (Bus. & Prof. Code, § 17204.)  In 2004, Proposition 64 established a new requirement for standing under the UCL.  Under the narrower standing requirements imposed by Proposition 64, a party must now "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.)

"To aid lower courts with determining whether a plaintiff has properly alleged an economic injury under Business and Professions Code section 17204, the *Kwikset Corp.* court listed four injuries that would certainly qualify under the statute: (1) the plaintiff surrendering more or acquiring less in a transaction than the plaintiff otherwise would have; (2) the plaintiff suffering the diminishment of a present or future property interest; (3) the plaintiff being deprived of money or property to which the plaintiff has a cognizable claim; or (4) the plaintiff being required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. [Citation.] These four injuries are not 'an exhaustive list' of the injuries a plaintiff may allege to properly plead an economic injury under Business and Professions Code section 17204, and 'the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact . . . .' [Citation.]" (*Jenkins v. JP Morgan Chase Bank, N.A., supra,* 216 Cal.App.4th at p. 522.)

Harrelson presented no evidence in the complaint that she lost money or property as a result of the unfair competition. Harrelson's claims of injury are all speculative. She claims she was making payments on an unenforceable contract. However, she has no grounds for claiming that it was unenforceable under ASFA. Further, she claims that she was burdened by buying a car that she could not afford. However, she makes no explanation (and we can think of none) that shows how the deal presented by CarMax induced her into buying the Saab. She agreed to the trade-in amount and the price of the Saab.

19

Further, Harrelson concedes that CarMax waited to cash her check until October 18, 2008, as agreed. Further, CarMax purchased her Civic, she received the agreed-upon amount for it, and the remainder was financed. Even if the VPA and discharge of lien disclosure had been on the same document as the RIC, the terms of the agreement would be the same, and the amount that she would owe to CarMax would remain the same.

Harrelson has failed to point to any evidence of injury supporting the complaint's allegations. The complaint relied significantly on ASFA violations and the fact that this constituted unfair competition. She completely failed to establish how the UCL violation on its own resulted in unfair competition, was deceitful, or was fraudulent. The contents of the RIC, the VPA, and discharge of lien disclosure set forth the terms of the agreement between Harrelson and CarMax regarding the sale of the Civic and the purchase of the Saab. She never alleged that she lost money or property as a result of the alleged wrongdoing by CarMax. Therefore, Harrelson has not demonstrated the standing necessary to pursue and prevail on any of the causes of action in the complaint brought under the UCL in her complaint.

However, "'[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]' [Citation.] '[S]uch a showing can be made for the first time to the reviewing court [citation] . . . .'" (*San Diego City*

20

*Firefighters, Local 145 v. Board of Administration, etc., supra,* 206 Cal.App.4th at pp. 605-606.)

Harrelson would have to show that she can plead facts indicating a causal link between her economic injury and CarMax's actions. In other words, Harrelson would have to amend her second and fourth causes of action to show she suffered her economic injury "'as a result of the defendant's unfair business practices.'" (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 32; see also *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 ["[t]he plaintiff has the burden of proving that an amendment would cure the defect"].

Harrelson claims for the first time on appeal that she would not have traded in her Civic if she knew "trading-in her Civic was not part and parcel of the transaction." She also claims she would not have paid for the product except for the misrepresentation. Harrelson cannot truthfully allege such a claim. Any claim that she would not have purchased the Saab and sold the Civic would be based solely on her own allegations. Moreover, we find nothing at all that made this transaction deceitful or unfair. The terms of the sale of the Civic were set out in the RIC, VPA, and discharge of lien disclosure, and all of the terms of payment on the purchase of the Saab were detailed in the RIC. We find nothing in them supporting any kind of fraud or deceit.

Harrelson also alleged that there was a violation of Civil Code section 1709. "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (Civ. Code, § 1709.) "A deceit, within the meaning of the last section, is either: [¶] 1. The suggestion, as a fact,

21

of that which is not true, by one who does not believe it to be true;  [¶]  2.  The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;  [¶]  3.  The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,  [¶]  4.  A promise, made without any intention of performing it."  (Civ. Code, § 1710.)

There is no violation of Civil Code section 1709.  As stated, Harrelson was advised of all of the terms and conditions pertaining to the sale of the Civic and the purchase of the Saab.  She agreed that if she purchased the Saab, she would finance the negative equity.  The documents clearly disclosed that she was obligated to sell the Civic regardless of the purchase of the Saab and was responsible for the payment of the negative equity.  There was nothing deceiving in the documents signed by Harrelson. CarMax followed through with the promises made in the documents.  Harrelson understood and agreed to both the held-check form and the terms of her Civic trade-in.

Harrelson contends that she could amend to allege a separate and distinct violation of the Consumer Legal Remedies Act (CLRA).  "The CLRA ""established a nonexclusive statutory remedy for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."""  [Citation.] The purposes of the act are 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' [Citation.]"  (*Pierce v. Western Surety Co., supra,* 207 Cal.App.4th at p. 91.)  She claims

that there were inconsistencies in the documents as the RIC called the Civic a "trade-in" while the VPA said the Civic was sold to CarMax. However, both the RIC and VPA make it clear that she is selling the car to CarMax. In financing the negative equity, she would use the proceeds as a "trade-in" for the Saab purchase and pay off the negative equity in the payments. Nothing about this transaction is deceitful or confusing. Further, she cannot claim that there were inconsistencies if she did not buy the Saab, as this scenario did not occur.

Finally, Harrelson claims that she could amend to show "garden variety fraud" based on inconsistent statements and falsehoods. However, we have found no inconsistent statements or falsehoods in the sale of the Civic and purchase of the Saab. No claim of fraud can be made on these grounds.

Harrelson has failed to show she has standing to bring a UCL claim. She has shown no injury in fact. Moreover, any attempt to amend the complaint to show a violation of the UCL, or alleged causes of action under CLRA, would not be successful. Harrelson cannot show that a violation of ASFA occurred as she filed her complaint after the one-year period of limitations had expired. Other than alleged technical violations of ASFA (which are time barred), Harrelson cannot show any injury. CarMax held her check for five days, she received financing, and she sold her Civic for the amount she agreed and received financing on the negative equity. Any possible speculative injury had the deal not gone through simply cannot support the action. As such, we find that the trial court properly granted CarMax's demurrer without leave to amend.

IV

DISPOSITION

We affirm the trial court's order granting the demurrer without leave to amend.

CarMax is awarded its costs on appeal.

RICHLI
Acting P. J.

We concur:

KING
J.

CODRINGTON
J.